**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHAKITA DAILY, O/B/O** | § | |
| **T.S. (MINOR),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-01347-O-BP** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**</u>

The Commissioner of Social Security decided T.S. is not entitled to Supplemental Security Income ("SSI") because she is not disabled. Her mother, Chakita Daily, brought this action on her behalf, seeking review of that decision under 42 U.S.C. § 1383c. Daily contends T.S.'s benefits were "wrongfully terminated" and suggests the ALJ's conclusion was incorrect. Finding no error, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Because T.S. is under eighteen, Daily applied for SSI on her behalf. ECF No. 20 at 2; *see* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 17, 17-1 at 162-67. She submitted an SSI application on March 27, 2018. *Id.* The application said T.S. was disabled because of disruptive behavior disorder and attention deficit hyperactivity disorder ("ADHD") and alleged a disability onset date of February 1, 2012. *Id.* at 82, 85. The Commissioner denied T.S.'s application initially and upon reconsideration. *Id.* at 49, 62. Daily sought review of these denials from Administrative

Law Judge ("ALJ") Ralph Shilling (*id.* at 111-12), who conducted a hearing (*id.* at 35-48) and affirmed the Commissioner's decision. *Id.* at 82-90.

After the Social Security Appeals Council denied further administrative review (*id.* at 1), Daily filed this action seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 1383c(3). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). While Daily raises a number of arguments regarding the cessation of her benefits in a previous proceeding (*see* ECF No. 20 at 1-4), this action only represents a timely appeal of the Commissioner's May 12, 2020 decision regarding T.S.'s SSI application. *See* ECF No. 1 at 1; 42 U.S.C. § 1383c. Consequently, the undersigned only addresses her arguments corresponding to denial of T.S.'s benefits.

## II.    STANDARD OF REVIEW

Title XVI of the SSA governs the SSI program. *See* 42 U.S.C. §§ 1381–1383f. Claimants seeking SSI benefits must first prove they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988). A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine the disability status of claimants who are minors, the Commissioner employs a sequential three-step evaluation process. 20 C.F.R. § 416.924a.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* "Substantial gainful activity" is any endeavor that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 416.972. Second, the claimant must have a severe impairment or

combination of impairments. *Id.* § 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). When the claimant is a minor, the ALJ has an additional step at this juncture. If the claimant's impairments do not meet or medically equal a listed condition, the ALJ then asks whether the condition is "functionally equivalent" to a condition in the listing, given the impact it has upon the child's life, schooling, and overall wellbeing. 20 C.F.R. § 416.926a. Unless the claimant's conditions meet, medically equal, or "functionally equal" a listed condition, the Commissioner will determine the minor claimant is not disabled. *Id.*

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d

492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617

(5th Cir. 1990)).

## III.    ANALYSIS

The ALJ applied correct legal standards and reached a decision substantial evidence

supports. *See Leggett*, 67 F.3d at 564. Without specifying where she thinks the ALJ went wrong,

Daily contends "the fact of the matter is that [T.S.] continue[s] to suffice the requirement provided

for under [42 U.S.C. 1382c] thereby both the Claimant and the Plaintiff contend[] that [T.S.'s]

social security benefits was [sic] wrongfully terminated." ECF No. 20 at 4. While Daily does not

take issue with the legal standards the ALJ used, she argues his conclusion was incorrect. Thus,

the undersigned construes Daily's brief as arguing the ALJ reached a decision unsupported by

substantial evidence. The undersigned disagrees.

The ALJ proceeded through the sequential three-step analysis used for minor claimants

seeking SSI. *See* 20 C.F.R. § 416.924a. At step one, he found "[t]he claimant has not engaged in

substantial gainful activity since March 27, 2018, the application date." Tr. 83. At step two, he

concluded "[t]he claimant has the following severe impairments: attention deficit hyperactivity

disorder (ADHD) and disruptive behavior/oppositional defiance disorder." *Id.* At step three, he

found "[t]he claimant does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1." *Id.* The ALJ explained this conclusion as follows:

> The severity of the claimant's mental impairments does not meet or medically equal
> the criteria of listings 112.08 or 112.11. In making this finding, the undersigned
> considered whether the "paragraph B" criteria are satisfied, as required by both
> listing[s]. To satisfy the "paragraph B" criteria, the mental impairment must result
> in at least one extreme or two marked limitations in a broad area of functioning,
> which are understanding, remembering, or applying information; interacting with
> others; concentrating, persisting, or maintaining pace; or adapting or managing
> oneself. A marked limitation means functioning in this area independently,

appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately, effectively, or on a sustained basis. The undersigned finds that the medical evidence and other evidence of record, discussed thoroughly in Finding 5 below, shows a moderate limitation in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The undersigned finds that the same evidence supports a marked limitation in the area of interacting with others. Because the claimant's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

*Id.* at 84. On that basis, the ALJ concluded T.S. had at least two severe impairments, but the relevant conditions did not meet or medically equal one enumerated in the regulatory listing. *Id.*

Next the ALJ considered whether T.S.'s conditions were a "functional equivalent" to a condition in the regulatory list, even if the conditions did not meet or medically equal a listed condition. *Id.* The ALJ determined that they were not, explaining his analysis in "Finding 5":

When determining functional equivalence, the undersigned evaluates the "whole child" (*see* Social Security Ruling 09-1p), by considering how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs.

*Id.* In so doing, the ALJ did not find evidence T.S.'s conditions so limited her daily life that they "functionally equaled" a disabling condition in the regulatory list. *Id.*

To functionally equal a listed condition, the claimant's conditions must result in "marked limitations" in two, or an "extreme limitation" in one, of the following six domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being." *Id.* (quoting 20 C.F.R. §§ 416.926a(a); 416.926a(b)(1)). With respect to each factor, the ALJ made the following determination:

The undersigned finds that the claimant has
- <u>less than a marked</u> limitation in acquiring and using information;
- <u>less than a marked</u> limitation in attending and completing tasks;

- <u>a marked</u> limitation in interacting and relating with others;
- <u>less than a marked</u> limitation in moving about and manipulating objects;
- <u>less than a marked </u>limitation in the ability to care for himself/herself; and
- <u>less than a marked</u> limitation in health and physical well-being.

*Id.* at 85 (emphasis in original). Based on these findings, the ALJ concluded T.S. was not disabled and thus not entitled to SSI. *Id.*

Daily's brief recounts difficulties that confronted her in bringing this action. *See* ECF No. 1 at 2-3. She notes she has "had to resign from jobs to properly care for [T.S.]" and reiterates that T.S.'s benefits "were sometimes MY only income and the loss of those benefits financially burdened myself and my children." *Id.* at 3. While the Court is sympathetic to her plight, the scope its review is narrow. The Court may only ask whether the ALJ adhered to correct legal standards and whether substantial evidence supports the ALJ's conclusion. *See Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382. Because Daily does not contend the ALJ used improper legal standards— and nothing in the record reflects that—only the latter question is relevant. Although Daily disagrees with the ALJ's findings, the undersigned sees ample evidence that supports them.

The ALJ listened to Daily's testimony at the hearing and considered that testimony when reaching his conclusion. In relevant part, the ALJ acknowledged:

> At the hearing, the claimant's mother testified that the claimant is in regular classes for the most part, with the exception of one special education class. She also confirmed that the claimant's school has a 504 plan in place to [help] the claimant stay on task and to reduce angry outburst[s]. She did not feel it had helped and reported that the claimant has consistent and frequent behavioral problems at school. The claimant's mother testified that the claimant has [] angry outburst[s], behavioral problems, and inappropriate responses to emotion. She also endorsed problems with the claimant's ability to perform age-appropriate tasks of hygiene, personal care, and feeding herself. The claimant's mother testified that the claimant has very limited hobbies or activities outside of school and does not engage with others. She testified that the claimant can make friends initially, but she felt the claimant loses the friends very quickly due to her behavior.

*Id.* at 85-86 (cleaned up). Nevertheless, the ALJ found "the claimant's medically determinable impairments cannot reasonably be expected to produce the symptoms <u>to the degree</u> alleged by the claimant." *Id.* at 86.

The ALJ pointed to a wide array of evidentiary sources to justify this conclusion in light of Daily's contravening testimony. As mentioned above, the functional equivalency analysis involves six domains. *See* 20 C.F.R. § 416.926a(b)(1). The ALJ robustly justified his findings for each.  For T.S.'s ability to acquire and use information, the ALJ noted "the claimant's mother previously denied that the claimant's [] learning was limited; however, she more recently alleged that the claimant was not performing well academically . . . even though there was still no limitation in her ability to understand." Tr. 87. The ALJ observed "treatment providers have not noted any significant problems with the claimant's thought processes, thought content, or cognition; her intelligence has generally been found in the average range." *Id.* Her teachers echoed this conclusion, as "two of the three teachers who provided completed questionnaire forms felt that the claimant had no problems in the domain of acquiring and using information" and the third teacher only noted "slight to obvious problems" in this regard. *Id.*

For T.S.'s ability to attend to and complete tasks, the ALJ's analysis began by noting discrepancies between Daily's testimony and her prior actions: "[i]n the domain of attending and completing tasks, the claimant's mother previously submitted that the claimant's ability to pay attention and stick to a task were broadly limited," but Daily "reported ceasing the claimant's medication for ADHD as she felt the diagnosis was not justified." *Id.* T.S.'s treatment notes also painted a different picture: "Although some examiners found impairment in the claimant's concentration and attention, it was routinely found to be adequate even during periods with subjective complaints of poor concentration." *Id.*

7

For T.S.'s socialization with others, the ALJ found other evidence in the record outweighed Daily's testimony. For instance, T.S. herself "reported having close friends at school and participating in the school band," despite Daily's testimony to the contrary. *Id.* Others from T.S.'s school "described the claimant as being able to make friends, with the actual issue being her tendency to socialize and distract during inappropriate times." *Id.* Along with that testimony, the ALJ noted "her school kept her in general education classes with the addition of [her § 504] accommodations." *Id.* Such evidence is "consistent with a finding that the claimant faces a marked, but not extreme, limitation in this area." *Id.* In finding her disability "marked," the ALJ acknowledged very real concerns about the impact of T.S.'s conditions on her social life. Nevertheless, the ALJ noted "the record reflects generally normal speech and hearing, an ability to make friends, and an ability to be cooperative with treatment providers that reflect a degree of limitation in this domain that fails to rise to the level of extreme." *Id.*

The ALJ determined no evidence supported a finding that T.S. struggles with moving and manipulating objects, rendering that domain immaterial. *Id.* As for the fifth domain—T.S.'s ability to care for herself—the ALJ acknowledged "[t]reatment providers often found the claimant's insight and judgment to be impaired, suggesting that the claimant would have problems independently addressing her needs." *Id.* at 88. Nevertheless, he noted T.S. could tend to her own personal hygiene, appeared "well groomed" during her consultative examinations, and managed most of her school studies independently. *Id.* Thus, the ALJ concluded T.S. had a "less than marked" limitation in this domain. *Id.*

Finally, for T.S.'s physical wellbeing, the ALJ noted "the claimant's mother denied that the claimant's physical abilities were limited." *Id.* at 88. Beyond Daily's testimony, the ALJ also looked to healthcare providers, who "described the claimant as overweight, which supports some

small degree of limitation," but noted "their physical examinations found no consistent, long-term musculoskeletal or neurological abnormalities that would [] significantly limit her ability in this domain. *Id.* Based on these findings, the ALJ concluded T.S.'s conditions did not materially impact her physical wellbeing. *Id.*

The above findings are rooted in substantial evidence, which is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236). The ALJ could find T.S. disabled if he made one of three different findings: (1) her condition matched a condition in the regulatory listing; (2) her condition "medically equaled" a condition in the listing; or (3) her condition was a "functional equivalent" to a listed condition. *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.926(a). His eight-page decision traced his analysis of each consideration and documented the evidentiary sources he relied upon in making his final determination. Tr. 82-90. In this regard, the ALJ's decision far exceeds the "substantial evidence" burden, which is satisfied by "more than a mere scintilla but less than a preponderance." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). Finding more than a scintilla of evidence in support of the ALJ's conclusion, the undersigned sees no reason to reverse the Commissioner's decision.

Daily insists "there was more than enough sufficient evidence presented to them in almost 3 years that a favorable decision should have been made." ECF No. 1 at 3. But she does not specify how the Commissioner deviated from applicable legal standards and addresses none of the evidence cited in the ALJ's decision. Based on the ALJ's robust evidentiary explications, the undersigned cannot find a lack of substantial evidence, as such a finding "is appropriate only if no credible evidentiary choices or medical findings support the decision." *See Boyd*, 239 F.3d at 704

(quoting *Harris*, 209 F.3d at 417). Because ample evidentiary choices and medical findings support the ALJ's conclusion that T.S. is not disabled, Judge O'Connor should affirm his decision.

## IV.    CONCLUSION

The ALJ applied correct legal standards and substantial evidence supports his determination that T.S. is not disabled and thus not entitled to SSI. For these reasons, Judge O'Connor should **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on February 9, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE